dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

EXHIBIT
B

# RESIDENTIAL LEASE AGREEMENT FOR SINGLE-FAMILY DWELLING

For and in consideration of the mutual covenants set forth herein and other good and valuable consideration, the sufficiency and adequacy of which is hereby acknowledged, Brittany Brooksher, Debbie Brooksher & Ethel Fuston (Guarantee) as tenant ("Tenant"), and Keller Williams as landlord ("Landlord"), do enter into this Lease Agreement ("Lease" or "Agreement") on this the 5th day of June, 2018 ("Binding Agreement Date").

**1. LEASE AGREEMENT.** Landlord hereby leases to Tenant and Tenant leases from Landlord all that tract or parcel of land, with such improvements as are located thereon, described as follows:

All that tract of land known as: 111 Hamblen (Address), Old Hickory (City), Tennessee 37138 (Zip), as recorded in Davidson County Register of Deeds Office, ______ deed book(s), ______ page(s), and/or ______ instrument number and further described as: N/A together with all the fixtures, landscaping, improvements, and appurtenances, all being hereinafter collectively referred to as the "Leased Property".

**A. INCLUDED** as part of the Leased Property (if present): all attached light fixtures and bulbs including ceiling fans; permanently attached plate glass mirrors; heating, cooling, and plumbing fixtures and equipment; all doors, storm doors and windows; all window treatments (e.g. shutters, blinds, shades, curtains, draperies) and hardware; all wall-to-wall carpet; range; all built-in kitchen appliances; all bathroom fixtures and bathroom mirrors; all gas logs, fireplace doors and attached screens; all security system components and controls; garage door opener and all (at least 0 ) remote controls; swimming pool and its equipment; awnings; permanently installed outdoor cooking grills; all landscaping and all outdoor lighting; mailbox(es); attached basketball goals and backboards; TV mounting brackets (but excluding flat screen TVs); antennae and satellite dishes (excluding components); and central vacuum systems and attachments.

**B.** Other items that **REMAIN** with the Leased Property at no additional cost to Tenant:

Refrigerator , Microwave, Stove

**C.** Items that **WILL NOT REMAIN** with the Leased Property:

Personal Property

**D. LEASED ITEMS FROM A THIRD PARTY.** Leased items that remain with the Leased Property: (e.g., security systems, water softener systems; fuel tank, etc.): N/A. Lease payments of the aforementioned items shall be the responsibility of ______ following date of possession. If said leases are not assumable, it will be Landlord's responsibility to pay balance.

**E. FUEL.** Fuel, if any, will be adjusted and charged to Tenant by Landlord in monthly installments in addition to the Rent at current market prices.

**2. LEASE TERM AND RENTAL AMOUNT.**

**A. Lease Term.** The term of this Lease Agreement shall be for Six (6 ) months and shall begin on 6/1/18 and end on 11/30/18 ("Lease Term").

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

Version 01/01/2018

TENNESSEE REALTORS

Copyright 2014 © Tennessee Realtors®

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

**B. Rent.**

During the Lease Term, Tenant shall pay, without any notice or demand, the amount of Twelve Hundred Dollars ($1200) per month on or before the first (1st) of each month ("Rent"). The Rent shall begin and the first payment shall be made on or before 06/05/2018. In the event that the first day of the Lease Term is other than the first (1st) of the month, the first and last months' Rent shall be determined on a pro rata basis.

Rent shall be made payable to Keller Williams at the following address: 2033 N. Mt Juliet Road, Mt Juliet, TN 37122

Rent shall be deemed paid upon the date it is received at the above address. There is a five day grace period ("Grace Period") beginning on the day that the Rent was due which is to be included in the calculation of the Grace Period. If the last day of the Grace Period falls on a Sunday; Legal Holiday; or any day set aside for county, state or national election, the Grace Period shall end the following business day. Saturday is deemed to be a business day for the purposes of paying Rent unless it falls on one of the aforementioned days. If Rent is not received in full at the above address on or before the end of the Grace Period of each month, a late charge of Seventy Five Dollars ($75) shall be charged to Tenant. ("Late Charge"). The amount of the Late Charge shall not, under any circumstances, exceed ten percent (10%) of the amount of Rent past due. If the bank returns a Rent check unpaid, Tenant shall owe Landlord an additional charge of 45 to cover the expense of processing. Landlord shall notify Tenant in writing of any changes to whom Rent is to be paid and the location to which Rent should be sent. Tenant waives notice and demand as to all payments of Rent due hereunder. All parties understand and agree that neither the Broker nor the licensee representing Landlord is acting in the capacity of a property manager in this transaction.

**3. SECURITY DEPOSIT.**

Tenant shall pay Twelve Hundred ($1200) as payment of a security deposit ("Security Deposit") to Keller Williams (name of holder) ("Holder") located at 2033 N. Mt Juliet TN 37122 (address of Holder) on or before the first day of the Lease Term. Security Deposit will be deposited by Holder in an account at First Bank bank or financial institution used only for that purpose. Security Deposit shall remain in this account unless transferred to a similar account with another bank or financial institution until the termination of this Lease. In the event that funds are transferred to another bank, Landlord shall notify Tenant in writing the name of the new bank or financial institution. Security Deposit may be used by Landlord toward payment of any damages to the Leased Property incurred during the Lease Term, normal wear and tear excepted. Said damages include costs for cleaning the Leased Property as well as those resulting from Tenant's failure to perform any of the terms of the Lease contained herein. Landlord may also apply the Security Deposit toward any unpaid Rent if Tenant vacates the Leased Property with Rent still due and owing Landlord. Landlord's damages shall in no way be limited to the amount of the Security Deposit. Any amount of Security Deposit remaining after deduction of said damages shall be returned to Tenant following the termination of the Lease.

Tenant shall have the right to inspect the Leased Property with Landlord to determine Tenant's liability for physical damages that are the basis for any charge against the Security Deposit UNLESS Tenant has:

1. Vacated the Leased Property without giving written Notice;
2. Abandoned the Leased Property;
3. Been judicially removed from the Leased Property;
4. Not contacted Landlord after the Landlord's Notice of Right to Mutual Inspection of the Leased Property;
5. Failed to appear at the arranged time of inspection as agreed upon between Landlord and Tenant;
6. If the Tenant has not requested a mutual inspection; OR
7. The Tenant is otherwise inaccessible to the Landlord.

**A. Mutual Inspection**

In a situation in which Landlord has requested that Tenant vacate the Leased Property or within five (5) days after Landlord receives written notice of Tenant's intent to vacate the Leased Property, Landlord shall provide notice to Tenant of Tenant's right to be present at the inspection of the Leased Property ("Landlord's Notice of Right to Mutual Inspection"). Within said notice [select one]:

☑ Tenant may request that time of inspection be set during normal business hours

**OR**

☐ Tenant may not request that time of inspection be set during normal business hours.

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

Landlord: [Select one].

☑ requires that inspection be scheduled after Tenant has completely vacated Leased Property and is ready to surrender possession and return all means of access to the Leased Property. Such inspection shall occur on the day Tenant vacates or within four (4) calendar days of Tenant vacating Leased Property.

**OR**

☐ Landlord will not require inspection to be scheduled after Tenant has completely vacated the Leased Property.

Tenant shall contact Landlord to schedule a mutually agreeable date and time for inspection. If Tenant fails to appear at such scheduled inspection, Tenant waives any right to contest any damages assessed by Landlord. At the scheduled inspection, Landlord and Tenant shall inspect the Leased Property and compile a comprehensive list of damages to the Leased Property and an estimated cost of repairing the damage which is the basis for any charge against the Security Deposit ("List of Damages"). Landlord and Tenant shall sign the List of Damages which shall be conclusive evidence of the accuracy of the listing of damages. In the event Tenant refuses to sign the List of Damages, Tenant shall state specifically in writing the items within the List of Damages with which he does not agree.

**B. Landlord Inspection**

If Tenant has performed any of the foregoing acts in which he no longer has a right to inspect the Leased Property as contained herein, Landlord shall inspect the Leased Property and compile a List of Damages. Under such circumstances, Tenant is not entitled to be present at said inspection. Landlord shall provide Tenant with a written copy of the List of Damages via certificate of mailing *upon Tenant's written request.*

**C. Additional Rights of Parties**

In the event that Tenant disputes the List of Damages, Tenant may bring suit in either the general sessions or circuit court of the county in which the Leased Property is located for those items to which he specifically dissented in his statement of dissent referenced above. Landlord shall not be entitled to retain any portion of the Security Deposit if Security Deposit was not deposited into a separate account solely used for that purpose and if Landlord fails to provide Tenant with a copy of the List of Damages as required herein.

Landlord may recover the costs of any and all contractual damages to which he is entitled herein, plus the cost of any additional physical damages to the Leased Property which are discovered by Landlord after an inspection has been completed. Any additional physical damages must be discovered by Landlord by the ***earlier*** of:

1. Thirty (30) days after Tenant has vacated or abandoned the Leased Property

OR

2. Seven (7) days after a new tenant takes possession of the Leased Property.

If Tenant vacates the Leased Property with unpaid Rent or other amounts due to Landlord, Landlord may remove the Security Deposit and apply it toward the unpaid debt. If Tenant vacates the Leased Property not owing any Rent and a refund is due, Landlord shall send notice to the last known or reasonably determinable address of the amount of said refund to Tenant. If Tenant does not respond to said notice within sixty days from the sending of the notice, then Landlord may remove the Security Deposit and retain it free from any claim by Tenant or any other person.

**4. REPAIRS AND MAINTENANCE.**

Tenant acknowledges that Tenant has inspected the Leased Property prior to the Binding Agreement Date stated herein and acknowledges that it is in a clean, fit, and habitable condition. Tenant acknowledges that all appliances (if present on the Leased Property), including but not limited to the refrigerator, dishwasher, washer, dryer, garbage disposal, heating system, air conditioning system, swimming pool equipment, plumbing, smoke detectors, septic systems, security systems, gas logs, hot water heater, and light fixtures (including ceiling fans) are operable as of the Binding Agreement Date unless otherwise noted herein. Tenant's taking possession of the Leased Property is evidence that the Leased Property is in a clean, fit, and habitable condition.

The following shall be kept in good working order and repair, normal wear and tear excepted, by either Landlord or Tenant as follows *[Check all that apply. The sections not marked shall not be part of this Lease Agreement.]:*

| | TENANT | LANDLORD | | TENANT | LANDLORD |
|---|---|---|---|---|---|
| Fence | ☐ | ☑ | Light Fixtures | ☑ | ☐ |
| Driveway | ☐ | ☑ | Exterior walkways | ☐ | ☑ |
| Interior Walls | ☑ | ☐ | Patio/Porch | ☐ | ☑ |

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE REALTORS Copyright 2014 © Tennessee Realtors®

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

| | TENANT | LANDLORD | | TENANT | LANDLORD |
|---|---|---|---|---|---|
| Carpet/Flooring | ☑ | ☐ | Landscaping/Yard | ☑ | ☐ |
| Swimming Pool | ☐ | ☐ | Outbuildings | ☐ | ☑ |

Any item not mentioned herein but existing on the Leased Property (other than furniture, fixtures and personal property of Tenant) shall be maintained by Landlord during the Lease Term and any extensions or hold-overs thereof.

Upon receipt of written notice from Tenant, Landlord shall, within a reasonable time period thereafter, repair all defects in those facilities and systems that are the responsibility of Landlord to maintain in good working order and repair. If Tenant does not perform its maintenance and repair obligations as set forth herein as promptly as conditions require in case of Emergency (as defined herein) or within fourteen (14) days after written notice by Landlord specifying the breach and requesting that Tenant remedy it within that period, Landlord may enter the Leased Property and cause the work to be done in a workmanlike manner and submit an itemized bill for the cost of repairs to Tenant. Tenant shall pay said repair bill at the time that the next Rent payment is due. If Lease Agreement has been terminated, Tenant shall pay repair bill immediately. Tenant shall be responsible for the reasonable costs of any and all repairs made necessary by the negligence or willful misconduct of Tenant (including Tenant's family members, agents, employees, contractors, licensees, invitees, guests, pets or anyone or anything else under the control of Tenant). In the event that Tenant does not promptly pay for any repairs and/or maintenance required under the Lease following termination of the Lease, Landlord may deduct that amount from the Security Deposit. Tenant agrees to immediately contact Landlord in the event that any malfunction or damage occurs to the heating and air conditioning systems, the plumbing (including hot water heater), septic, electrical or roofing systems.

**5. LEAD BASED PAINT DISCLOSURE.**

☐ does not apply.

☑ does apply (Property built prior to 1978 – see attached Lead Based Paint Disclosure for Rental Property).

**6. INSURANCE.**
Landlord shall maintain fire and casualty insurance on the structure of the Leased Property only during the Lease Term and any extensions thereof and shall provide proof of such to Tenant upon request. Tenant shall maintain adequate insurance for their personal property during the Lease Term and any extensions thereof and shall demonstrate as such to Landlord upon request. Landlord shall not be responsible for any damage to Tenant's property, unless such damage is caused by Landlord's gross negligence or willful misconduct.

**7. HOLDOVER AND RENEWAL.**
Tenant shall provide written notice to Landlord no later than thirty (30) days prior to the end of the Lease Term as to Tenant's intent to renew or terminate this Lease at the end of the Lease Term. If Tenant wishes to renew the Lease, then Landlord, at his sole discretion, may enter into a new lease agreement with Tenant. If Tenant fails to provide said notice or if Tenant remains in possession of the Leased Property following the Lease Term, a hold-over period shall be created. In the event of a hold-over period, a month-to-month tenancy shall be created at a new rent of Thirteen Hundred dollars ($1300) per month payable on the first (1st) of each month with the first increased monthly rent being paid on the first (1st) of the initial month of the hold-over period. All other terms and conditions of this Lease shall remain in full force and effect during the month-to-month tenancy and shall continue as such until the termination of such holdover period.

**8. APPLICATION FOR LEASE.**
As a precondition to Tenant's leasing of the Leased Property, Tenant agrees to provide, in advance, the information requested in the Tenant Information Addendum which is attached hereto and hereby authorizes its verification and obtaining of a credit report. The credit report and employment verification is to be obtained within seven days from the date upon which the Tenant Information Addendum has been delivered to Landlord. In the event that the credit report and/or employment verification does not meet with Landlord's approval or if any of the information provided therein is misleading or untrue, Landlord may, at his discretion, terminate this Lease.

**9. PROPERTY CONDITION.**
Tenant agrees to maintain the Leased Property in the same or better condition than it was as of the Binding Agreement Date, normal wear and tear excepted. Tenant further agrees to return possession of the Leased Property to Landlord in the same or better condition as of the Binding Agreement Date and will be held responsible if there is damage to the Leased Property, normal wear and tear excepted, or items included in the Agreement are removed. Tenant agrees not to alter, improve, or make any additions to the Leased Property without the prior written consent of Landlord. Tenant shall remove any and all ashes, rubbish, garbage, and other waste from the Leased Property.

**10. RULES AND REGULATIONS.**
A. The Leased Property shall only be used as a one family, residential unit;

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE REALTORS Copyright 2014 © Tennessee Realtors®

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

B. Tenant is prohibited from adding, changing or in any way altering the locks installed on the doors of the Leased Property without prior written consent of Landlord. If all keys and garage door openers to the Leased Property are not returned when Tenant vacates the Leased Property, Landlord may charge a re-key charge in the amount of $125__________________.

C. Non-operative vehicles are not permitted on the Leased Property. Any such non-operative vehicle may be removed by Landlord at the expense of Tenant after providing a ten day written notice posted on such vehicle, and Tenant shall have no right or recourse against Landlord thereafter.

D. No goods or materials of any kind or description which are combustible or would increase fire risk shall be kept in or placed on the Leased Property.

E. No nails, screws or adhesive hangers except standard picture hooks, shade brackets and curtain rods may be placed in walls, woodwork or any part of the Leased Property.

F. Tenant shall not place any objects or personal property in a manner that is inconsistent with the load limits of the Leased Property. Waterbeds, pianos, aquariums and other such heavy furniture or equipment shall only be permitted on Leased Property with written consent of Landlord.

G. Boats, trailers, recreation vehicles (RVs), and campers are not permitted on the Leased Property.

H. No animals, birds or pets of any kind shall be permitted on the Leased Property without prior written consent of Landlord.

I. Tenant will not deliberately or negligently destroy, deface, damage, impair or remove any part of the Leased Property or permit any person to do so.

J. Tenant will act and require other persons on the Leased Property to act in a manner that will not disturb the neighbors' peaceful enjoyment of their property.

K. Tenant will not engage in any illegal activity nor will permit any other persons on the Leased Property to engage in illegal activity.

L. During freezing temperatures, Tenant agrees to take all reasonable steps to protect pipes from freezing.

M. Landlord may establish additional reasonable Rules and Regulations concerning the maintenance, use, and operation of the Leased Property. Amendments and additions to the Rules and Regulations shall be effective upon delivery of a copy thereof to Tenant.

**11. UTILITIES AND SERVICES.**

Tenant agrees to pay all costs of connecting Utilities (water, electricity, sewer and/or natural gas) and/or Services (including but not limited to garbage pickup, cable or satellite television, telephone service, security alarm service, and internet service), deposits for same and costs of Utilities and/or Services incurred during the Lease Term. Tenant shall cause all accounts to be placed in Tenant's name no later than the first day of the Lease Term. If Tenant fails to place all Utilities in his/her name within three (3) days of occupancy, then Landlord shall terminate the Utilities if in the name of Landlord. No satellite dishes shall be installed on the Leased Property without the prior written consent of Landlord.

**12. FIRE OR CASUALTY DAMAGE.**

In the event that the Leased Property is damaged or destroyed by fire or casualty to an extent that the use of the Leased Property is Substantially Impaired, Tenant may:

(a) immediately vacate the Leased Property, and

(b) shall notify the Landlord in writing within fourteen (14) days thereafter of Tenant's intention to terminate the Lease, in which case the Lease terminates as of the date of vacating.

Substantially impaired ("Substantially Impaired") for purposes of this Lease means that the Leased Property has been deemed unfit for human habitation by a governmental authority.

In the event that the Leased Property is damaged or destroyed by fire or casualty to an extent that restoring it to its undamaged condition requires the Tenant to vacate the Leased Property, Landlord is authorized to terminate this Lease within fourteen (14) days of providing written notice to Tenant. If the Lease is terminated, Landlord shall return all prepaid Rents and Security Deposits. Accounting for Rent in the event of termination or apportionment is to occur as of the date Tenant returns keys to Landlord or the date on which Tenant vacated Leased Property, whichever is earlier.

**13. RESPONSIBILITY OF LANDLORD.**

During the Lease Term, Landlord agrees to make timely payment of the existing mortgage(s) on subject property and pay all property taxes and association fees, if applicable, when due. If Landlord fails to make such mortgage payments in a timely manner, or to pay all real estate taxes or association fees thereon, Tenant shall have the right to elect to cancel and rescind this Lease Agreement by giving written notice to Landlord of such election and Tenant shall thereupon be entitled to a return of all prepaid Rents and the Security Deposit, or in the alternative, Tenant may elect to pay such delinquent mortgage payments to the mortgagee and/or pay any delinquent taxes or association fees on said Leased

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE REALTORS Copyright 2014 © Tennessee Realtors®

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

Property and shall receive full credit for such sums as may be extended by Tenant toward the amount owed to Landlord under the terms of this Lease Agreement. In such case, this Lease Agreement shall remain in full force and effect.

**14. SUBLET AND ASSIGNMENT.**
Tenant may not sublet the Leased Property in whole or in part or assign this Lease without the prior written consent of Landlord.

## 15. DEFAULT.

### A. Waiver of Notice.
**Written notice of failure to pay Rent is hereby waived by Tenant.**

**B. Notice of Breach or Termination of Lease.**
In the event that Tenant breaches this Lease and/or engages in any of the conduct listed below, Landlord may, in Landlord's sole discretion, elect to do either of the following:

**1. Notice.**
In the event that Tenant is materially noncompliant with this Lease and/or engages in any of the following conduct:

- fails to comply with obligations imposed on Tenant by applicable building and housing codes;
- fails to keep Leased Property in as clean and safe condition as when Tenant took possession;
- fails to dispose of all ashes, rubbish, garbage or other waste to designated collection areas;
- deliberately or negligently destroys, defaces, damages, impairs or removes any part of the Leased Property or permits any other person to do so;
- engages in illegal activity on the Leased Property; OR
- acts or permits others on the Leased Property (with or without Tenant's consent) to act in a manner which disturbs the neighbors' peaceful enjoyment of the premises,

which materially affects health and safety, Landlord may, in Landlord's sole and reasonable discretion, deliver a written notice to Tenant specifically stating the acts and omissions constituting the violation and that the Lease is subject to termination ("Notice of Default").

**a. Breach remediable by payment of Rent, cost of repairs, damages or other monetary amounts due.**
If the breach is remediable by payment of Rent, cost of repairs, damages or any other amount due to Landlord, Landlord may advise Tenant that he has fourteen (14) days from date of receipt of Notice of Default to remediate the breach. If the breach is not remediated within the fourteen (14) days, Landlord may elect to terminate the Lease. In the event that Tenant is to make repairs to cure the breach, these repairs must be requested in writing by the Tenant and authorized by Landlord prior to making any repairs. These repairs are only allowed in the event that Landlord advises Tenant that prior authorization for repairs is required in the Notice of Default.

If Tenant engages in substantially similar conduct which constituted a prior breach within six (6) months of the previous breach, Landlord may terminate the Lease upon at least seven (7) days' written notice documenting the breach and the date of the termination of the Lease.

**b. Breach not remediable by payment of Rent, cost of repairs, damages or other monetary amounts due.**
If the breach for which notice was given is not remediable by the payment of Rent, cost of repairs, damages, or any other amount due to Landlord, Landlord may advise Tenant that the Lease shall terminate upon a date not less than fourteen (14) days after receipt of the Notice of Default.

### 2. Termination.
In the event that Tenant breaches this Lease by failing to pay Rent, Landlord may, in Landlord's sole and reasonable discretion, terminate this Lease Agreement and proceed with a detainer action for possession of the Leased Property.

Election of either option 1 or 2 above does not bind Landlord to take such action in the event of a similar violation in the future.

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE REALTORS Copyright 2014 © Tennessee Realtors®

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

**C.** In the event that Landlord terminates the Lease, Landlord shall have the right to secure another tenant for the Leased Property. In any event, Tenant shall remain liable to Landlord for any and all Rent due under the terms of this Lease for the entire Lease Term.

**D.** Abandonment by Tenant is considered a default under the terms of this Lease.

**E.** Landlord may recover damages and/or obtain injunctive relief for violation of the terms of this Lease and/or for any of the following:

- Tenant failing to comply with obligations imposed on Tenant by applicable building and housing codes;
- Tenant failing to keep Leased Property in as clean and safe condition as when Tenant took possession;
- Tenant failing to dispose of all ashes, rubbish, garbage or other waste to designated collection areas;
- Tenant deliberately or negligently destroying, defacing, damaging, impairing or removing any part of the Leased Property or permitting any other person to do so;
- Tenant engaging in illegal activity on the Leased Property; OR
- Tenant acting or permitting others on the Leased Property (with or without Tenant's consent) to act in a manner which disturbs the neighbors' peaceful enjoyment of the premises.

**F.** Landlord may recover punitive damages from Tenant for the willful destruction of property caused by Tenant or by any other person on the Leased Property with Tenant's consent.

**16. ATTORNEY'S FEES AND COURT COSTS.**
Tenant agrees to pay all reasonable attorneys' fees together with any court costs and expenses which Landlord incurs in any action for breach of this Lease Agreement or failure to pay Rent.

**17. RIGHT OF ACCESS.**
Landlord and Landlord's agents shall have the right to access the Leased Property for inspection; to make necessary or agreed repairs, decorations, alterations, or improvements; to supply necessary or agreed to services; or to exhibit the Leased Property to prospective or actual purchasers, mortgagees, workers or contractors during reasonable hours with Tenant's consent which shall not be unreasonably withheld. In case of an Emergency, Landlord and Landlord's agents may enter the Leased Property without Tenant consent. An "Emergency" is a sudden, generally unexpected occurrence or set of circumstances which demands immediate action. If any of the Utilities have been turned off due to no fault of Landlord, Landlord and Landlord's agents may enter the Leased Property in order to make inspection to ascertain any damages to the Leased Property and to make any necessary repairs of damage resulting from the lack of Utilities. Landlord shall also have right of access to the Leased Property under the following circumstances: (1) pursuant to a court order; (2) following the fourteen day cure period listed in paragraph 15 herein if Tenant fails to cure default; (3) if Tenant has abandoned or surrendered the Leased Property; or (4) if Tenant is deceased, incapacitated, or incarcerated. Landlord shall also be permitted to enter the Leased Property when reasonably necessary during Tenant absence for more than seven days. The parties hereby agree that the Landlord and Landlord's agents shall also be permitted to enter the Leased Property beginning thirty (30) days' prior to the Agreement's termination date for the purpose of showing the Leased Property to prospective tenants. Landlord shall give notice (does not necessarily have to be written notice) to Tenant at least twenty-four (24) hours prior to entry for showing purposes.

**18. ABANDONMENT.**
Tenant is required to notify Landlord in writing of any anticipated absence from the Leased Property in excess of seven (7) days. Notice shall be given on or before the first day of any extended absence. Tenant's unexplained or extended absence from the Leased Property for thirty (30) days or more without payment of Rent as due shall be prima facie evidence of abandonment. In such event, Landlord may re-enter and take possession of the Leased Property.

Tenant's nonpayment of Rent for fifteen (15) days past the Rent due date combined with other reasonable factual circumstances indicating Tenant has permanently vacated the Leased Property, including, but not limited to, the removal by Tenant of substantially all of Tenant's possessions and personal effects from the Leased Property, or Tenant's voluntary termination of Utilities to the Leased Property, shall also be prima facie evidence of abandonment. Landlord will then be permitted to post notice at the Leased Property and send notice to Tenant by regular mail, postage prepaid to the address of the Leased Property that:

(a) Landlord has reason to believe that Tenant has abandoned the Leased Property;

(b) Landlord intends to re-enter and take possession of the Leased Property, unless Tenant contacts Landlord within ten (10) days of the posting and mailing of the notice;

(c) if Tenant does not contact Landlord within the ten day period, Landlord intends to remove any and all possessions and personal effects remaining in or on the Leased Property and to re-rent the Leased Property; and (d) if Tenant does not reclaim the possessions within thirty (30) days of Landlord taking possession of the possessions and personal effects, Landlord intends to dispose of Tenant's possessions and personal effects.

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

Landlord will include a telephone number and mailing address at which he may be contacted in aforementioned notice. If Tenant does not claim personal property within an additional thirty (30) days following Landlord's re-entry to Leased Property and taking possession of Tenant's personal property, Landlord may sell or dispose of said personal property and apply the proceeds of said sale to unpaid Rents, damages, storage fees, sale costs, court costs, advertisement and attorney's fees. Any balances are to be held by Landlord for Tenant for a period of six (6) months subsequent to the sale date, and thereafter will become the property of Landlord.

**19. TERMINATION FOR VIOLENCE OR THREAT TO HEALTH, SAFETY, OR WELFARE.**
Notwithstanding any other provision of this Lease, Landlord may terminate this Lease within three (3) days from the receipt of written notice by Tenant if Tenant or any other person on the Leased Property with the consent of Tenant:

(a) Willfully or intentionally commits a violent act;

(b) Behaves in any manner which constitutes or threatens to be a real and present danger to the health, safety or welfare of the life or property of other tenants or persons on the Leased Property; or

(c) Creates a hazardous or unsanitary condition on the Leased Property that affects the health, safety, or welfare or the life or property of other tenants or persons on the Leased Property.

**20. NOTICE.**
Except as otherwise provided herein, all notices and demands required or permitted hereunder shall be in writing and delivered (1) in person, (2) by prepaid overnight delivery service, (3) by facsimile transmission(FAX), (4) by the United States Postal Service, postage prepaid, registered or certified return receipt requested or (5) Email (if provided herein). Notice shall be deemed to have been given as of the date and time it is actually received unless otherwise provided herein. Notices shall be provided to the parties at the address shown below, unless otherwise provided by the parties in writing. Landlord designates the party listed below as his agent for service of any and all notices.

| Landlord | Tenant |
|---|---|
| Keller Williams/C. Donna Knight | Brittany Brooksher & Debbie Brooksherr |
| 2033 N. Mt Juliet Road | Ethel Fuston, Guarantee |
| Mt Juliet TN 37122 | |
| Telephone #: 615-758-8886,615-804-0833 | Telephone #: 615357-0156, 615-847-0045 |
| Fax # | Fax # |
| E-mail cdonnasellhomes@gmail.com | E-mail debbiebrooksher3@gmail.com |

**21. NOTICE TO LANDLORD OF REPAIRS NEEDED.**
In the event that there is a malfunction or defect in the electrical wiring or fixtures; heating and air conditioning system; plumbing; hot water heater; gas pipes; or any other item which is to be maintained by Landlord as determined herein, Tenant shall immediately notify Landlord in writing so that Landlord may make any required repairs. Tenant agrees that Landlord shall not be liable for any damages resulting from any temporary malfunctions or defects to any of these systems or other appliances on the Leased Property, unless said malfunction is due to the gross negligence or willful misconduct of Landlord. Tenant shall be responsible for the reasonable cost of repairs made necessary by Tenant's negligence or willful misconduct or Tenant's failure to pay utility bills.

**22. PROPERTY MANAGEMENT COMPANY.**
The property management company, if any, of the Leased Property is as follows:

Company: KELLER WILLIAMS REALTY
Manager: C. Donna knight
Address: 2033 N. Mt. Juliet Road, Mt. Juliet, TN 37122
Telephone Number: 615-758-8886, 615-804-0833 Email: cdonnasellhomes@gmail.com

**23. CONDEMNATION.**
If all or any part of the Leased Property is taken or appropriated by any public or quasi-public authority under the power of eminent domain, and if the remaining portion of the Leased Property is thereby rendered untenantable or unusable for the purposes herein stated, this Lease shall terminate when the condemning authority takes possession, and any Rent paid for any period beyond possession by the condemning authority shall be repaid to Tenant. Landlord shall receive the entire condemnation award without deduction therefrom for an interest of Tenant in the Leased Property, but Tenant shall have the right to make a separate claim with the condemning authority for, and to receive therefore, (a) any moving expenses incurred by Tenant as a result of such condemnation; (b) any costs incurred or paid by Tenant in connection with any alteration or improvement made by Tenant to the Leased Property; (c) the value of Tenant's personal property taken; and (d) any other separate claim which Tenant may be permitted to make under applicable law, provided that such other separate claims shall not reduce or adversely affect the amount of Landlord's award.

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

**24. HOLD HARMLESS.**

Both Landlord and Tenant understand and agree that neither Broker nor licensee for either party is acting in the capacity of a property manager in this transaction unless otherwise stated herein. Furthermore, it is understood and agreed that the real estate firms and real estate licensee(s) representing or assisting Landlord or Tenant (collectively "Brokers") are not parties to this Agreement and do not have or assume liability for the performance or nonperformance of Landlord or Tenant. Landlord and Tenant agree that Brokers shall not be responsible for any of the following, including but not limited to those matters which could have been revealed through a survey, flood certification, title search or inspection of the Leased Property; for the condition of the Leased Property, any portion thereof, or any item therein; for building products and construction techniques; for any geological issues present on the Leased Property; for any issues arising out of the failure to physically inspect the Leased Property prior to entering into this Agreement and/or date of possession; for the necessity or cost of any repairs to the Leased Property; for hazardous or toxic materials; for the tax or legal consequences of this transaction; for the availability, capability, and/or cost of utility, sewer, septic, or community amenities; for any proposed or pending condemnation actions involving the Leased Property; for applicable boundaries of school districts or other school information; for the appraised or future value of the Leased Property; for square footage or acreage of the Leased Property; for any condition(s) existing off the Leased Property which may affect the Leased Property; and for the uses and zoning of the Leased Property whether permitted or proposed. Landlord and Tenant acknowledge that Brokers are not experts with respect to the above matters and that they have not relied upon any advice, representations or statements of Brokers (including their firms and affiliated licensees) and waive and shall not assert any claims against Brokers (including their firms and affiliated licensees) involving same. Landlord and Tenant understand that it has been strongly recommended that if any of these matters or any other matters concerning the Leased Property are of concern to them, that they secure the services of appropriately credentialed experts and professionals of Landlord's or Tenant's choice for the independent expert advice and counsel relative thereto.

**25. BROKERAGE.**

As specified by separate agreement, Landlord agrees to pay Listing Broker the agreed upon compensation. The Listing Broker will pay Leasing Broker, from the compensation received, an amount, if any, in accordance with the terms and provisions specified by separate agreement. The parties agree and acknowledge that the Brokers involved in this transaction may receive compensation from more than one party. All parties to this Agreement agree and acknowledge that any real estate firms involved in this transaction shall be deemed a third party beneficiary only for the purposes of enforcing their commission rights, and as such, shall have the right to maintain an action on this Agreement for any and all compensations due and any reasonable attorney's fees and court costs.

**26. OTHER PROVISIONS.**

**A. Entire Agreement.**

This Lease shall be for the benefit of, and be binding upon, the parties hereto, their heirs, successors, legal representatives and permissible assigns. This Lease constitutes the sole and entire agreement between the parties hereto and no modification of this Lease shall be binding unless signed by all parties or permissible assigns to this Lease. No representation, promise, or inducement not included in this Agreement shall be binding upon any party hereto. Any permissible assignee shall fulfill all the terms and conditions of this Lease. It is hereby agreed by both Landlord and Tenant that any real estate agent working with or representing either party shall not have the authority to bind the Landlord, Tenant, or any assignee to any contractual agreement unless specifically authorized in writing within this Agreement.

**B. Governing Law and Venue.**

This Lease is intended as a contract for the lease of residential real property and shall be governed by and interpreted in accordance with the laws and in the courts of the State of Tennessee.

**C. Time of Essence.**

Time is of the essence in this Lease.

**D. No waiver.**

Any failure of Landlord to insist upon the strict and prompt performance of any covenants or conditions of this Lease or any of the rules and regulations set forth herein shall not operate as a waiver of any such Lease provision or of Landlord's right to insist on a prompt compliance in the future of such covenant or condition, and shall not prevent a subsequent action by Landlord for any future violation. No provision, covenant or condition of this Lease may be waived by Landlord unless such waiver is in writing and signed by Landlord.

**E. Terminology.**

As the context may require in this Lease: (1) the singular shall mean the plural and vice versa; (2) all pronouns shall mean and include the person, entity, firm or corporation to which they relate; (3) the masculine shall mean the feminine and vice versa; (4) the term day(s) used throughout this Agreement shall be deemed to be calendar day(s) ending at 11:59 p.m. local time unless otherwise specified in this Agreement. Local time shall be determined by the

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE REALTORS Copyright 2014 © Tennessee Realtors®

dotloop signature verification: www.dotloop.com/my/verification/DL-354462065-2-34OC

location of the Leased Property; and (5) the term legal holiday shall be January 1; the third (3rd) Monday in January, known as Martin Luther King, Jr. Day; the third (3rd) Monday in February, known as President's Day; Good Friday; the last Monday in May, known as Memorial Day; July 4th; the first (1st) Monday in September, known as Labor Day; the second (2nd) Monday in October, known as Columbus Day; November 11th, known as Veteran's Day; 4th Thursday in November, known as Thanksgiving Day; and December 25th. If a deadline falls on a Saturday, Sunday or legal holiday, the deadline shall roll to the next business day unless otherwise stated herein.

**F. Equal Housing.**
This Leased Property is being leased without regard to race, color, sex, religion, handicap, familial status, or national origin.

**G. Severability.**
If any portion or provision of this Lease is held or adjudicated to be invalid or unenforceable for any reason, each such portion or provision shall be severed from the remaining portions or provisions of this Lease, and the remaining portions or provisions shall be unaffected and remain in full force and effect and the Lease shall be interpreted so as to bring the Lease into compliance with all applicable laws.

**27. METHOD OF EXECUTION.**
The parties agree that signatures and initials transmitted by facsimile, other photocopy transmittal, or by transmittal of digital signature as defined by the applicable State or Federal law will be acceptable and may be treated as originals and that the final Lease Agreement containing all signatures and initials may be executed partially by original signature and partially on facsimile, other photocopy documents, or by digital signature as defined by the applicable State or Federal law.

**28. Special Stipulations.** The following Special Stipulations, if conflicting with any preceding paragraph, shall control:

Tenant agrees that there will be NO SMOKING by tenant or guest of tenants.
tenant agrees that there will be NO DRUG usage or activity while on the premises.
Tenant will be allowed one miniture Lab, 35 pound, 13 years old with $350 non refundable fee.

**LEGAL DOCUMENTS: This is an important legal document creating valuable rights and obligations. If you have any questions about it, you should review it with your attorney. Neither the Broker nor any Agent or Facilitator is authorized or qualified to give you any advice about the advisability or legal effect of its provisions.**

**NOTE: Any provisions of this Agreement which are preceded by a box "□" must be marked to be a part of this Agreement. By affixing your signature below, you also acknowledge that you have reviewed each page and have received a copy of this Agreement.**

The party(ies) below have signed and acknowledge receipt of a copy.

**TENANT** 6-5-18 at 12:45 o'clock □ am/ ☑ pm
**Date**

**TENANT** 6-5-18 at 12:45 o'clock □ am/ □ pm
**Date**

The party(ies) below have signed and acknowledge receipt of a copy.

dotloop verified 06/05/18 8:19AM CDT 7CEN-NZMD-J3LT-NL52
**LANDLORD** ______ at ______ o'clock □ am/ □ pm
**Date**

**LANDLORD** ______ at ______ o'clock □ am/ □ pm
**Date**

**For Information Purposes Only:**

Keller Williams Realty
Listing Company

Keller Williams Realty
Leasing Company

C. Donna Knight
Independent Licensee

C. Donna Knight
Independent Licensee

*NOTE: This form is provided by TAR to its members for their use in real estate transactions and is to be used as is. By downloading and/or using this form, you agree and covenant not to alter, amend, or edit said form or its contents except as where provided in the blank fields, and agree and acknowledge that any such alteration, amendment or edit of said form is done at your own risk. Use of the TAR logo in conjunction with any form other than standardized forms created by TAR is strictly prohibited. This form is subject to periodic revision and it is the responsibility of the member to use the most recent available form.*

This form is copyrighted and may only be used in real estate transactions in which C. Donna Knight is involved as a TAR authorized user. Unauthorized use of the form may result in legal sanctions being brought against the user and should be reported to the Tennessee Association of Realtors® at (615) 321-1477.

TENNESSEE REALTORS Copyright 2014 © Tennessee Realtors®