EXHIBIT D

KW KELLERWILLIAMS REALTY

**RENTAL AGREEMENT**

This Rental Agreement is made and entered into this 20 day of September, 2022, by and between Keller Williams Realty-Mount Juliet (hereinafter referred to as the "Landlord") and Brittany Brooksher & Debbie Brooksher & Ethel Fuston (hereinafter collectively referred to as "Tenant").

For and in consideration of the mutual covenants contained herein, Landlord agrees to rent to Tenant and Tenant agrees to rent from Landlord, the premises known as 111 Hamblen Old Hickory TN 37138 (hereinafter referred to as the "Premises") under the following terms and conditions.

**1. RENT:** Tenant agrees to pay to Landlord on the first day of each month in advance during the term of this Lease, a monthly rental amount of $ 1200, which will be payable to Landlord on the 1st date of each month. In the event any check or returned autodraft given by Tenant to Landlord is returned by the bank unpaid, then Tenant shall pay a handling fee of $50.00 to Landlord as additional rent. Nothing contained herein shall in any way limit Landlord's rights to declare a default under paragraph 8 of this Rental Agreement, and to assert its rights thereunder, in the event rent is not paid when due on the 1st day of the month. There shall be a five-day grace period between the day the rent is due and the day it is collected. $100 fee for the late payment of rent will be charged. If the last day of the five-day grace period occurs on a Sunday or legal holiday, as defined in § 15-1-101, the landlord shall not impose any charge or fee for the late payment of rent, provided that the rent is paid on the next business day. Any charge or fee, however described, which is charged by the landlord for the late payment of rent shall not exceed ten percent (10%) of the amount of rent past due.

**2. TERM:** The initial term of this Lease shall be 12 months, commencing on the 1 day of October, 2022 and ending on the 30 day of September 2023.

**3. YARD MAINTENANCE:** Tenant is responsible for yard maintenance including mowing, trimming and watering. Tenant agrees to keep the walks and driveway free of all debris.

**4. SECURITY DEPOSIT:** Tenant agrees to deposit with the Landlord a security deposit in the amount of $ 1200 (Paid) DOLLARS, deposited in Wilson Bank & Trust for the performance of each and every covenant and agreement of this Rental Agreement. Such deposit is refundable to Tenant within thirty (30) days following satisfaction and completion of all of the terms of this Lease provided that no defective conditions other than normal wear and tear are left unrepaired by Tenant, and that Tenant is not indebted to the Landlord. Any portion of the said deposit not



Case 3:25-cv-00860 Document 1-4 Filed 07/30/25 Page 1 of 9 PageID #: 33

required to reimburse Landlord for Landlord's expense in repairing defective conditions caused by Tenant or reimbursement for expenses incurred by the Landlord in placing the premises in rental condition, or for paying amounts owed by Tenant to Landlord, shall be refunded to Tenant. If tenant breaks lease, tenant will be responsible to continue paying rent until a new tenant is procured or lease expires. Also, security deposit will be forfeited.

**5. CONDITION OF PREMISES:** REPAIRS. Tenant has examined the Premises and acknowledges that the Premises are in good order and repair. Tenant agrees that the execution of this Rental Agreement constitutes conclusive evidence of his receipt of the Premises in good order and repair. Except as otherwise specified in this Rental Agreement, Tenant acknowledges that no representation as to the condition or repair has been made by Landlord or Landlord's agent and that no promise to, alter, repair or improve, either before or at the execution hereof, not contained in this Rental Agreement has been made by Landlord or his agent. Landlord shall be responsible only for such expenses and repairs as to render the Premises habitable within a reasonable time following written notice from Tenant; provided, however, that if any damage beyond normal wear and tear is caused by Tenant, or Tenant's invitees, licensee, or guest, Tenant agrees to pay to Landlord the cost or repair of such damage upon demand. . Tenant further agrees that all maintenance requests that are approved and assigned to a contractor, that the contractor will coordinate directly with the Tenant to schedule the repair work and that Tenant is solely responsible for ensuring an adult 18 years or age or older meets the contractor at the property to grant access. Upon the termination of this Rental Agreement, Tenant shall return the Premises to Landlord in the same condition as existed on the date of execution of the Lease, reasonable wear and tear accepted. Light bulbs, cleaning supplies, batteries and other household maintenance items are the responsibility of the Tenant and shall be replaced solely at the Tenant's expense.

Without limiting the generality of the foregoing, **Tenant shall:**

A. Not obstruct the driveways, sidewalks, entry ways, which shall be used for ingress and egress only.
B. Keep all windows, glass, doors, locks, and hardware in good, clean order and repair; be responsible for any damaged or broken glass or screens.
C. Not obstruct or cover the windows or doors other than with blinds or window treatments installed or approved by the landlord.
D. Not leave windows or doors in an open position during any inclement weather.
E. Keep all air conditioning equipment filters clean and free from dirt. When the outside temperatures are below freezing, heating systems are working if they heat the property to 65 degrees or better. In the summer months, air conditioning systems are working properly if they are cooling the air within 20 degrees of the outside temperature. If Tenant places a service call to report a problem with heat or air conditioning and the Landlord's approved technician determines the system to be in normal working order, or if a failure of the system to work is caused by the tenant through neglect or even not understanding how to operate the system or controls (thermostat), **then the Tenant will be solely responsible for the cost of the service call.**
F. Keep all sinks, toilets, tubs, disposals, and all other water plumbing apparatus in good order and repair and shall use the same only for the purpose for which they were constructed. Tenant shall not allow any sweepings, sand, rags, ashes, bones, grease, or other substances to be thrown or deposited therein. Any damage to any such apparatus

and the cost of clearing stopped plumbing resulting from misuse shall be borne by Tenant.

G. Tenant, Occupant(s) and guests of Tenant or Occupant shall always maintain order in the Premises and at all places on the Premises, and shall not make or permit any loud or improper nuisance, noises, or otherwise disturb other residents or neighbors.
H. Leaking pipes, unless caused by negligence of Tenant, are to be repaired by the Landlord within a reasonable time after notice, but the Landlord shall not be liable for any damages resulting from such leaks and/or overflows. Alteration of plumbing, appliances, or fixtures is strictly prohibited.
I. No signs, placards or advertising shall be placed on the Premises by Tenant or Tenant's discretion without the prior written consent of the Landlord.
J. Tenant expressly agrees to keep the exterior of the premises in a neat and orderly manner during the entire term of the Lease unless such services are provided. Tenant agrees to blow off the leaves and debris during the fall on the driveway maintaining any and all storm drains.
K. Light bulbs, batteries and filters of any kind are the Tenant's expense and responsibility; test all smoke detectors regularly.
L. The Premises is accepted as insect, rodent, and pest free by the Tenant at the time of the original occupancy. Tenant is responsible to spray the premises at Tenant's expense to control all insects, rodents, vermin and all other nuisances. Any non-wood boring insects or other pests, to include rodents, not reported in writing within the first 10 days of the original lease agreement are to be exterminated immediately and removed from the property at Tenant's expense.
M. Tenant agrees not to park or store a motorhome, recreational vehicle, or trailer of any type on the Premises without prior written consent of the Landlord.
N. Tenant agrees that there will be no parking on the grass at any time.
O. Tenant agrees to de-ice and shovel snow from driveways and sidewalks during the winter months;
P. Tenant shall not keep on the Premises any item of a dangerous, flammable or explosive character that might unreasonably increase the danger of fire or explosion on the Premises, including, but not limited to kerosene heaters or other heating devices other than those provided or which might be considered hazardous by any responsible insurance company.

**6. USE OF PREMISES.**

A. The premises shall be solely for residential purposes and shall be occupied only by the persons named in Tenant's application to rent and any children, which may be born to or legally adopted by Tenant during the term. No more than 3 persons may occupy the Premises at any time and no more than two (2) persons may occupy any individual bedroom at any time.
B. The Premises shall be used so as to comply with all state, county, and municipal laws and ordinances and shall be kept in a clean and orderly condition.
C. Tenant shall not allow any other person, other than Occupants or Temporary Guests to use or occupy the Premises without first obtaining Landlord's written consent to such use. Temporary Guests are individuals as Tenant may allow from time to time staying with Tenant, which shall not exceed more than 14 consecutive days/nights. Tenant is responsible for supervising Temporary Guests

and shall not allow Temporary Guests to occupy the Premises for any 24-hour or longer periods in which the Tenant is away from the Premises. (d)Tenant shall not use the Premises, or permit it to be used, for any disorderly or unlawful purpose or in any manner so as to interfere with other person's quiet and enjoyment of their Premises. Nor shall Tenant perform or permit any practice that may damage the reputation of the Premises or the neighborhood or perform or permit any practice that may be injurious to the Premises or that might increase the rate of insurance of the Premises.Tenant will be held solely responsible for any and all damages or breach of contract conducted by temporary guest.

D. NO SMOKING will be allowed inside the premises by the tenant or their guest.
E. Tenant may not remodel, paint or structurally change Premises nor remove any fixture therefrom without the written consent of the Landlord.

**7. ASSIGNMENT, SUBLETTING, ETC.** Tenant shall neither sublet the Premises nor any part thereof or assign this Rental Agreement or permit by any act of default of himself or any person, any transfer of Tenant's interest by operation of law, nor offer the Premises of any part thereof for lease of sublease without, in each case, the written consent of Landlord. If Landlord consents to such transfer, Tenant shall not be relieved of any of Tenant's obligations under this Rental Agreement unless expressly released from such obligation in writing by Landlord.

**8. DEFAULT; REMEDIES.** If Tenant fails to pay rent or other charges due hereunder, or if Tenant abandons the Premises, fails to perform any of Tenant's obligations hereunder, or if an event of default, as defined elsewhere in this Rental Agreement occurs, then, Tenant shall there upon be in default hereunder and Landlord may at his option and without prior notice to Tenant, declare Tenant to be in default. Whereupon Tenant shall surrender the Premises in accordance with paragraph 14 of this Rental Agreement, failure of which, can result Landlord to retake possession as provided by law. Upon said declaration of default, the entire unpaid balance of rent for the entire rental term shall be immediately due and payable, together with any costs or expenses for which Tenant is responsible under this Rental Agreement, as Landlord's liquidated damages; provided, however, that in the event that the Premises is relet for all or a portion of the remaining term of this Rental Agreement, then the aforesaid liquidated damages shall be reduced by the amount of rent to be received under such reletting Agreement to the extent applicable to the remaining term of this Rental Agreement, less any costs or expenses associated with such reletting; provided further, however, that Landlord may reasonably reject any prospective new Tenant for the Premises. In no event shall Landlord's liquidated damages be less than the unpaid rent, which has accrued prior to Landlord's acceleration of rent, plus any costs or expenses for which Tenant is responsible under this Rental Agreement.

**9. FURNITURE AND APPLIANCES.** Such furnishings and appliances as may be supplied to Tenant by Landlord shall be available for Tenant's use in a normal manner and shall be surrendered at expiration hereof in good condition, ordinary wear excepted. Landlord expressly makes no representations and warranties as to the general condition of said furnishings and appliances. After taking possession, should the dishwasher, refrigerator, microwave(if built in) and stove fail, the Landlord will have responsibility to have the same repaired. Should the washer and dryer, if applicable, fail, the tenant is solely responsible to have the same repaired. Appliances included with rent:

______________________________________________________________.

**10. ACCESS.** Upon 24-hour notice, Landlord, Landlord's agent and any other person authorized by the same shall at anytime have the right of free access during the term to inspect, repair, show the property to new tenants, alter or exhibit the Premises for sale/for rent, or to make repairs as required herein, and at anytime to exhibit the Premises for sale and affix "for sale" in such places as Landlord or Landlord's agents shall determine, all without interference of any kind and regardless of consent by Tenant or others. Further, at anytime within ninety (90) days prior to the end of the term, Landlord or Landlord's agent shall have the right to exhibit the Premises for rent and affix "for rent" signs in such places as Landlord's agents shall determine, all without interferences of any kind regardless of consent by Tenant or others.

**11. UTILITIES.** Tenant shall pay for all water, gas, sewer, electricity, telephone, garbage service, and all other services or utilities applied to the Premises during the term of this Rental Agreement.

**12. INSURANCE.** Landlord shall not be liable for any loss or damage of Tenant by fire, theft, breakage, burglary or otherwise; nor for any actual damage to persons or properties in or about the Premises resulting from electrical failure, water, windstorm, etc., which shall cause, issue or flowing to or from any part of said Premises or improvements, including pipes, gas lines, sprinklers, pools, or equipment. Tenant hereby covenants and agrees to make no claim for any such damages or loss against Landlord, but to purchase insurance to protect Tenant. Landlord shall maintain fire and casualty insurance on the structure of the Premises only during the Lease Term and any extensions thereof and shall provide proof of such to Tenant upon request. Tenant shall maintain adequate insurance for their personal property and liability insurance in the amount of $------ during the Lease Term and any extensions thereof and shall demonstrate as such to Landlord upon request. Landlord shall not be responsible for any damage to Tenant’s property, unless such damage is caused by Landlord’s gross negligence or willful misconduct.

**13. EMINENT DOMAIN.** If the whole or any part of the Premises is taken or condemned by any competent authority for any public use or purpose, the term of this Rental Agreement shall end upon, but not before the date when possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. Tenant shall have no right to appear and defend in any suit brought by such competent and authority, and Tenant shall have no right in any award. Rent shall be prorated as of the date of such termination.

**14. SURRENDER OF PREMISES.** Tenant shall deliver possession of Premises to Landlord in good order and repair and in a condition clean and ready to occupy upon the termination or expiration of this Rental Agreement, or upon a declaration of default in accordance with paragraph 8 of this Rental Agreement. Tenant shall deliver all keys, garage door openers, and amenity access keys to Landlord.

**15. EXTENDED TERM.** Any party may terminate this Agreement at the end of the initial term by giving the other party thirty (30) days written notice prior to the end of the initial term, but if no such notice is given by either party, then this Rental Agreement will be automatically extended on a month to month basis until terminated by either party upon thirty (30) days written notice. Landlord will increase the monthly rental in effect during any extended term by

$200 per month giving Tenant written notice thereof at least thirty(30) days before the date on which such monthly increase shall take effect.

**16. EXPENSES.** Tenant shall pay to Landlord all Landlord's costs and expenses incurred in or about the enforcement of the covenants and agreements of this Rental Agreement or the enforcement of any rights and remedies afforded to Landlord by statute.

**17. BINDING EFFECT.** All covenants and agreements in this Rental Agreement shall be binding upon and inure to the benefit of the heirs, executors, administrators, successors and assignees of Landlord and Tenant, subject to restrictions set forth in paragraph 8 hereof.

**18. SEVERABILITY.** In the event any one or more of the provisions contained in this Rental Agreement shall for any reason be held to be invalid, illegal, unconscionable, or unenforceable in any respect, such invalidly, illegality, unconscionability or unenforceability shall not affect any other provision of this Rental Agreement, but this Rental Agreement shall be construed as if such invalid, illegal, unconscionable, or unenforceable provision had never been contained herein.

**19. NO WAIVERS.** No failure of Landlord to exercise any rights granted hereunder, or to insist upon strict compliance by Tenant with its obligations hereunder, and no custom or practice by the parties at variance with the terms hereof, shall constitute a waiver of Landlord's rights to declare a default upon a breach of the exact terms of this Rental Agreement. No representative, agent or employee of Landlord has or shall have any authority to waive any provision of this Rental Agreement unless such waiver is expressly made in writing and signed by Landlord.

**20. DISCLOSURE.** Keller Williams Realty-Mount Juliet is the property management company of the Premises and notice may be served upon them at the following address: 2031 N. Mt. Juliet Road, Ste 101, Mount Juliet, TN 37122 .

**21. NOTICES.** Any and all notices or other communications required or permitted by this Rental Agreement shall be in writing, and shall, except as otherwise required by law or this Rental Agreement, be considered duly served and given when personal delivery, emailed or instead of personal service, three (3) days after being deposited in the mail, registered, return receipt requested, postage prepaid, addressed to addressee of the parties to whom it is directed. Address for the Tenant of this Agreement shall be the address of the Premises or the last known address of Tenant.

**22. TIME OF THE ESSENCE.** Time is of the essence of this Rental Agreement.

**23. NO ESTATE IN LAND.** This lease shall create the relationship of Landlord and Tenant and no estate shall pass out of Landlord. Tenant has only a right of quiet enjoyment, not subject to levy and sale, and not assignable by Tenant, except by Landlord's consent.

**24. HOLD HARMLESS.** Tenant shall indemnify and hold harmless Landlord and Landlord's agents from any and all loss, damage, injury, claim, demand, cost and expense arising out of or connected with the Tenant's use, operation or condition of the Premises, or any personal property or equipment of Tenant now or hereafter placed, stored, or located therein. Tenant

further covenants and agrees that as to any liability to invitee, licensee, or trespasser of the Premises, that Tenant shall be liable to such person for any injury, claim, damage, loss, demand, cost and expense arising out of that person's use, operation, etc. of the Premises or the use of any of Tenant's personal items, fixtures or equipment located therein. It is expressly covenanted and agreed between the Landlord and the Tenant that all personal property and equipment of Tenant now or hereafter, placed, stored or located in the Premises shall be the sole responsibility and risk of Tenant and any damage, loss, theft or destruction thereof shall be borne solely by the Tenant and shall be Tenant's sole responsibility. Tenant agrees to pay all costs incurred as a result of Tenant's breach of this Rental Agreement, including, but not limited to, reasonable attorney's fees and court costs.

**25. ADDITIONAL AGREEMENTS AND COVENANTS.** Tenant agrees to the following

below:

A. Cleaning Requirements

**26. PETS.** Tenant has 1 (lab) at time of occupancy. A non-refundable pet fee in the amount of $ 350 (Paid) is due and payable upon move in. No other pets will be allowed without prior written consent from property manager.

**27. MISCELLANEOUS.**

A. Only 2 automobiles may be located on the Premises and those automobiles shall be registered with Landlord. Non-operative vehicles are not permitted on the Premises. Boats, trailers, recreational vehicles (RVs), and campers are not permitted on the Premises.
B. No other personal or work-related recreational vehicles at any time are allowed unless written consent is given by Landlord.
C. Tenant agrees not to hang items of clothing on the porch.
D. Tenant may not install locks on any door or window without Landlord's written consent. Tenant is prohibited from adding, changing or in any way altering locks installed on the doors of the Premises without prior written consent of Landlord. If all keys and garage doors are not returned to Landlord when Tenant vacates the property then Landlord may charge Tenant a $150 re-key charge.
E. If applicable, Tenants agree to abide by all HOA rules and regulations and are subject to fine by the HOA at Tenant's expense.
F. Tenants agree to change the air filter every 60 days at their expense.
G. Tenant agrees not to have drugs on the property at any time.
H. If tenant breaks the lease, tenant agrees to forfeit 100% of the security deposit and continue to pay rent until a new lease has been secured.
I. Tenant will not engage in any illegal activity nor will permit any other persons on the Premises to engage in illegal activity.
J. Tenant will not deliberately or negligently destroy, deface, damage, impair or remove any part of the Premises or permit any person to do so.
K. Landlord may establish additional reasonable rules and regulations concerning the

maintenance, use, and operation of the Premises. Amendments and additions to the rules and regulations shall be effective upon delivery of a copy thereof to the Tenant.

**28. ENTIRE AGREEMENT.** This Rental Agreement, and any addendum or other documents incorporated herein by reference, constitute the sole and entire agreement between the parties, and no representations, inducements, promises or agreements, oral or otherwise, between the parties not set forth herein shall be of no force or effect.

**29. MONEY DUE PRIOR TO OCCUPANCY.** Tenant shall pay the sum of $ 1200 in accordance to this paragraph prior to occupying the Premises. Tenant shall not be entitled to move in or to keys to the Premises until all money due prior to occupancy has been paid. If no date is specified below, then funds shall be due prior to Tenant occupancy. Any funds designated in this paragraph due after occupancy, shall be paid accordingly. Any funds due under this paragraph shall be payable to Landlord.

- First Months Rent $ 1200 due 10/1/22.
- Pet Fee $ 350 (Paid) due 10/1/22.
- Security Deposit $ 1200 (Paid).

**30. ATTORNEY'S FEES**. Tenant agrees to pay all reasonable attorney's fees together with any court costs and expenses which Landlord incurs in any action for breach of this Lease Agreement or failure to pay rent.

**31.TERMINATION FOR VIOLENCE OR THREAT TO HEALTH, SAFETY, OR WELFARE.** Notwithstanding any other provision of this Lease, Landlord may terminate this Lease within three (3) days from the receipt of written notice by Tenant if Tenant or any other person on the Premises with the consent of Tenant:

(a) Willfully or intentionally commits a violent act;

(b) Behaves in any manner which constitutes or threatens to be a real and present danger to the health, safety or welfare of the life or property of other tenants or persons on the Premises;

(c) Creates a hazardous or unsanitary condition on the Premises that affects the health, safety, or welfare or the life or property of other tenants or persons on the Premises.

LANDLORD:

Keller Williams Realty Mount Juliet
Office: 615-758-8886
2031 N. Mt Juliet Road Ste 101
Mount Juliet, TN 37122

Property Manager:
C. Donna Knight
Cell: 615-804-0833
cdonnasellhomes@gmail.com

P.M.Signature C Donna Knight Date 9/20/22

P.M. Signature____________________ Date________________

TENANT: Brittany Brooksher | Debbie Brooksher | Ethel Fuston

Phone: 615-357-0156 | 615-847-0045

EMail: debbiebrooksher3@gmail.com

Signature Brittany Brooksher Signature Debbie Brooksher

Date____________________ Date____________________

Signature____________________

Date____________________